UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Armando Gutierrez,

    *Plaintiff,*

v.

John Barwick,

    *Defendant.*

No. 14 CV 2799

Judge Lindsay C. Jenkins

MEMORANDUM OPINION AND ORDER

Petitioner Armando Gutierrez ("Petitioner" or "Gutierrez"), who is incarcerated at Western Correctional Center, brings this habeas corpus action pursuant to 28 U.S.C. § 2254 challenging his conviction in the Circuit Court of Cook County. For the reasons below, the petition is denied.

## I.    Background

In reviewing a petition for federal habeas corpus, the Court presumes that the state court's factual determinations are correct unless Petitioner rebuts those facts by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Weaver v. Nicholson*, 892 F.3d 878, 881 (7th Cir. 2018). Gutierrez does not challenge any of the underlying facts in his petition, so the Court draws the following facts from the Illinois Appellate Court's opinion in his direct appeal, *People v. Gutierrez* ("*Guttierez I*"), 899 N.E.2d 1193 (Ill. App. Ct. 2008), [Dkt. 32-12]; the Illinois Appellate Court's order denying his postconviction appeal, *People v. Gutierrez* ("*Gutierrez II*"), 2013 IL App (1st) 111309-

U, [Dkt. 32-22]; and the state court records that Respondent provided pursuant to Rule 5 of the Rules Governing Section 2254 Cases.[1]

### A. Underlying Facts and Conviction

In 2000, Petitioner Armando Gutierrez was charged with the first-degree murder of Jorge Castaneda and attempted first-degree murder of Nester Castaneda.[2] It was undisputed at trial that he shot and killed Jorge and shot and wounded Jorge's brother Nester; Gutierrez argued that he did so in self-defense. *Gutierrez II*, 2013 IL App (1st) 111309-U, ¶¶ 3–4. Gutierrez and other testifying witnesses gave different accounts of the incident, summarized below.

Gutierrez was close friends with Jorge and Nester Castaneda. On October 25, 2000, Gutierrez was at the Castaneda home working on his truck, which had been damaged in an accident a few days earlier. *Id.* at ¶ 4. Gutierrez was in the yard with Jorge, his cousin Antonio Castaneda, and two other men known as Trigger (Marco Canas) and Goofy (identity unknown), drinking beer and smoking marijuana. Gutierrez had about two beers and a joint. *Id.*; *Gutierrez I*, 899 N.E.2d at 1195. Nester and Melissa, his 14-year-old sister who also lived in the house, were inside. Around 9:30pm, a car drove by the house and the occupants shouted rival gang slogans. *Gutierrez II*, 2013 IL App (1st) 111309-U, ¶¶ 4–5, 10. Gutierrez and other witness' testimony diverges from here.

---

[1] Citations to docket filings generally refer to the electronic pagination provided by CM/ECF, which may not be consistent with page numbers in the underlying documents.

[2] To avoid confusion, the Court refers to members of the Castaneda family by their first names.

Antonio, the prosecution's sole eyewitness to Jorge's murder, testified that after the car drove by, he and Gutierrez went inside to retrieve a 9-mm handgun from a safe in Nester's room where Nester was sleeping. *Id.* at ¶ 5; *Gutierrez I*, 899 N.E.2d at 1195. They returned to the yard and Gutierrez put the gun on top of his truck. *Id.* Gutierrez, "stumbling and mumbling under the influence of the joint and beers," headed to his truck intending to go home. *Gutierrez I*, 899 N.E.2d at 1195. Antonio and the others told Gutierrez to sit down, worried he might crash his truck again. Gutierrez became enraged, grabbed the gun, and began cursing at the men. Antonio ran into the garage and heard several shots fired. He also heard Jorge yelling at Gutierrez to put the gun down. Gutierrez shot Jorge repeatedly. Antonio saw Jorge laying on the ground. Then Antonio, Goofy, and Trigger fled the scene. *Id.*; *Gutierrez II*, 2013 IL App (1st) 111309-U, ¶ 5.

Nester testified that he and Gutierrez were good friends and saw each other daily. Two days before the shooting, Gutierrez told Nester that he liked Melissa. Nester was displeased by this revelation and told Gutierrez that he needed to stop to remain Nester's friend. Nester and Jorge were protective of their sister. *Id.* at ¶ 7.

Nester and Melissa testified that after they heard the gunshots, Melissa ran into Nester's room. Gutierrez came into the room and, according to Melissa, Nester stepped away from him. Nevertheless, Gutierrez shot Nester in the chest, stomach, and groin. Melissa then ran upstairs and Gutierrez followed her. *Id.* at ¶¶ 6, 8. Nester testified that Gutierrez was mumbling to himself but not stumbling. *Id.* at ¶ 8. Melissa testified that Gutierrez tried to kiss her and banged her head against the

3

wall and told her repeatedly that he loved her. Nester struggled up the stairs to grab Gutierrez and they fought before Gutierrez fled the house with the gun. *Id.* at ¶¶ 6, 8. When police arrived, Melissa told them that Gutierrez shot her brothers. *Id.* at ¶ 6.

Gutierrez's account of the incident differed in key respects. According to him, Jorge instigated the altercation. After the gang members drove by, Antonio alone retrieved the gun from the house and handed it to Jorge. Trigger lit and passed around a marijuana cigarette, and Gutierrez took "a couple drags off of it," and drank about two beers. *Id.* at ¶¶ 10–11. Antonio then told Jorge that Gutierrez was trying to "hook up" with Melissa. In a rage, Jorge hit Gutierrez's head with the butt of the gun. Jorge and Antonio jumped on Gutierrez and they all struggled for the gun, which Gutierrez wrestled from Jorge. At Jorge's direction, Antonio went to the garage to retrieve a gun from Jorge's car. Jorge then picked up a piece of steel and approached Gutierrez. Thinking Jorge was going to kill him, Gutierrez panicked and started shooting as he ran into the house. *Id.* at ¶¶ 11–12. Nester then attacked Gutierrez, and Gutierrez shot him. Gutierrez followed Melissa upstairs and told her not to worry. Then he ran back to Jorge and pleaded with him to wake up. *Gutierrez I*, 899 N.E.2d at 1196. Police arrived on the scene within minutes. *Id.* at 1195.

Detective John Halloran testified that he spoke to Gutierrez within two hours of the incident. He observed a cut on Gutierrez's forehead and other bruises and injuries, which Gutierrez said he sustained in the car accident five days earlier. Gutierrez appeared calm, coherent, and didn't slur his words. *Gutierrez II*, 2013 IL App (1st) 111309-U, ¶ 9. He claimed he hadn't shot anyone, that he was just hanging

out in the backyard, and that there was a "gap" in his memory before the arrest. He also denied being on drugs or alcohol that day. On the stand, Gutierrez admitted that he'd lied to police and that the cut on his forehead was from Jorge's gun. *Id.* at ¶ 13. It wasn't until Gutierrez's initial petition for postconviction relief that he claimed he'd smoked marijuana laced with PCP prior to the shooting. [Dkt. 32-15 at 79.]

At trial, the court instructed the jury on first and second-degree murder. *Gutierrez II*, 2013 IL App (1st) 111309-U, ¶ 14. The jury returned guilty verdicts for first-degree murder, attempted first-degree murder, and aggravated battery with a firearm, which was merged with the attempted first-degree murder count. Gutierrez was sentenced to consecutive prison terms of 40 years for murder and 20 years for attempted murder. *Id.* The court also considered Gutierrez's prior convictions as aggravating factors, including two convictions for aggravated battery. *Gutierrez I*, 899 N.E.2d at 1196.

## B. Direct Appeal

In June 2005, Gutierrez filed a direct appeal arguing that (1) his conviction should be reduced to second-degree murder based on imperfect self-defense; and (2) the trial court abused its discretion in sentencing him to 40 years for murder and 20 years for attempted murder. [3] [Dkt. 32-7.] The state appellate court affirmed, and the Illinois Supreme Court denied Gutierrez's petition for leave to appeal ("PLA").

---

[3] The Illinois Appellate Court affirmed the trial court's decision to permit Gutierrez to file a late notice of appeal due to ineffective assistance of appellate counsel. *Gutierrez I*, 899 N.E.2d at 1197–98.

*Gutierrez I*, 899 N.E.2d; *People v. Gutierrez*, 904 N.E.2d 982 (Ill. 2009) (Table); [Dkts. 32-12, 32-14.]

### C. Postconviction Proceedings

### 1. First Postconviction Petition

In November 2009, Gutierrez filed through counsel a petition for state postconviction relief. [Dkt. 32-15 at 37–92.] He also filed a *pro se* supplement to the petition in March 2010. [*Id.* at 95–107; Dkt. 32-16 at 18.] The petition, as supplemented, raised the following claims:

(1) Trial counsel was ineffective in failing to:

    a. Investigate and present evidence for a voluntary intoxication defense;

    b. Question a juror who equivocated during *voir dire* about her objectivity and use a peremptory challenge against the juror;

    c. Move to suppress Gutierrez's statement to police based on his intoxication and request for counsel;

    d. Move to suppress evidence resulting from Gutierrez's arrest;

    e. Object to the trial court's failure to admonish the venire that a defendant's choice not to testify may not be held against him;

    f. Object to prejudicial comments made during the State's closing argument; and

    g. Carry out the above actions, which had the cumulative effect of violating his Sixth Amendment rights.

(2) The trial court failed to admonish the venire that a defendant's choice not to testify may not be held against him;

6

(3) The State knowingly relied on perjured testimony from Nester and Detective Halloran;

(4) Gutierrez's custodial statement to police should have been suppressed as coerced;

(5) The State erred during closing argument in referring to Gutierrez's post-arrest silence and arguing facts not in evidence;

(6) Appellate counsel for the direct appeal was ineffective for failing to argue grounds 1–3;

(7) Illinois' truth-in-sentencing law is unconstitutional and void as applied to Gutierrez's sentence.

[Dkt. at 32-15 at 39–70, 95–107.]

Among other documents Gutierrez attached to his amended petition was his affidavit stating that he smoked marijuana laced with PCP on the night of the shooting, consumed alcohol, and couldn't remember everything that occurred. He stated that his trial counsel instructed him not to mention this information because it wouldn't help his self-defense claim. He also attached two letters he sent to counsel before trial instructing counsel to locate Goofy and Trigger, who would confirm that he was high on PCP, and suggesting that a pharmacologist testify about the effects of PCP. The petition also included an affidavit from Trigger stating that Gutierrez smoked marijuana laced with PCP on the night of the shooting, that only Trigger knew it contained PCP, and that Gutierrez shot Jorge in self-defense. *Gutierrez II*, 2013 IL App (1st) 111309-U, ¶¶ 18–20; Dkt. 32-15 at 79, 81–90.]

The trial court granted the State's motion to dismiss. [Dkt. 32-16 at 138–55.] On appeal in June 2012, Gutierrez filed a counseled brief, which only argued that trial counsel was ineffective for failing to investigate and present a voluntary intoxication defense. [Dkt. 32-18.] Gutierrez moved to file a *pro se* supplemental brief, but the state appellate court denied it, reasoning that the Office of the State Appellate Defender ("OSAD") had already filed one. [Dkt. 32-21.] In December 2013, the state appellate court also affirmed the trial court's order. *Gutierrez II*, 2013 IL App (1st) 111309-U. In January 2014, Gutierrez filed a petition for rehearing, which was denied. [Dkts. 32-23, 32-24.] In February 2014, he filed a *pro se* PLA raising all the claims in his postconviction brief and his denied supplemental brief. [Dkt. 32-25.] The Illinois Supreme Court denied the PLA in March 2014. *People v. Gutierrez*, 5 N.E.3d 1126 (Ill. 2014) (Table).

### 2. § 2-1401 Petition and First Successive Postconviction Petition

In March 2014, Gutierrez filed a petition for relief from judgment pursuant to 735 ILCS 5/2-1401. [Dkt. 32-27 at 33–39.] Citing *Alleyne v. United States*, 570 U.S. 99 (2013), he argued that the trial court's imposition of consecutive sentences violated his Sixth Amendment right to a jury trial where the fact used to trigger mandatory consecutive sentences was not submitted to the jury. [*Id.*] In May 2014, the trial court denied the petition, holding that his reliance on *Alleyne* was misplaced because *Alleyne* doesn't apply retroactively on collateral review. [*Id.* at 73–78.] The court also noted that Gutierrez filed his §2-1401 petition over eight years after the two-year

statute of limitations expired and no exception applied because his claim was meritless. [*Id.* at 76–78.]

While Gutierrez's appeal was pending, he moved to file a successive postconviction petition in June 2014, which raised the following arguments:

(1) His custodial statement to police should have been suppressed as coerced;

(2) The State knowingly relied on perjured testimony from Detective Halloran;

(3) The State withheld evidence of Detective Halloran's misconduct in other cases;

(4) Trial counsel was ineffective for failing to move to suppress Gutierrez's statement, investigate Detective Halloran, and present a voluntary intoxication defense; and

(5) A recently acquired expert affidavit supported Gutierrez's voluntary intoxication defense.

[Dkt. 32-28 at 8–67.] On November 6, 2014, the trial court denied the petition, reasoning that Gutierrez failed to show cause or prejudice for failure to assert his claims in previous filings, nor did he claim actual innocence, one of which is required to file a successive postconviction petition. [*Id.* at 221–34.]

Gutierrez's subsequent appeal was consolidated with his pending appeal of the denial of his § 2-1401 petition. OSAD, Gutierrez's appointed counsel, filed a motion to withdraw under *Pennsylvania v. Finley*, 481 U.S. 551 (1987). [Dkt. 32-29.] OSAD's position as to his § 2-1401 petition was that "there is no arguable claim that *Alleyne* rendered Gutierrez's consecutive sentences improper." [*Id.* at 14.] As to his postconviction petition, OSAD stated that none of the grounds raised in the petition

were "arguably meritorious." [*Id.* at 15.] On March 23, 2016, the state appellate court affirmed denial of both petitions and granted OSAD's motion to withdraw. *People v. Gutierrez*, 2016 IL App (1st) 141802-U.

### 3.    Second Successive Postconviction Petition

In May 2020, Gutierrez moved to file a second successive postconviction petition, which he amended in April 2021. Gutierrez argued that, because he was 24 years old at the time of his offense, his 60-year sentence was an unconstitutional *de facto* life sentence under *Miller v. Alabama*, 567 U.S. 460 (2012), the Eighth Amendment, and the Proportionate Penalties Clause of the Illinois Constitution. [Dkt. 131-2 at 4, 29.] The trial court denied his petition as frivolous and without merit, [Dkt. 131-3], and on December 22, 2022, the state appellate court affirmed. *People v. Gutierrez*, 2022 IL App (1st) 210916-U. The Illinois Supreme Court denied Gutierrez's PLA on September 27, 2023. *People v. Gutierrez*, 221 N.E.3d 326 (Ill. 2023) (Table).

### 4.    Resentencing

In May 2023, Gutierrez sought leave to file a third successive postconviction petition, arguing that he should be resentenced because the sentencing court had considered his prior convictions as aggravating factors under a statute that had since been declared unconstitutional. [Dkt. 112-1 (citing *People v. Aguilar*, 2 N.E.3d 321 (Ill. 2013)).] The State agreed and in September 2024, his sentence was reduced to 37 years for first-degree murder and 15 years for attempted murder. [Dkts. 112-3, 127-1.] Gutierrez filed a motion to reconsider in September 2024, which was pending as of March 4, 2025. [Dkt. 127-2.]

### D.    Habeas Petition

In April 2014, Gutierrez filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 while his postconviction petition was still pending. [Dkts. 1, 4.] He then filed an amended petition in October 2017. [Dkt. 25.] In December 2020, the Cout granted Gutierrez's motion to stay while he pursued his second postconviction petition. [Dkt. 53.] In 2023, Gutierrez requested that the stay be lifted to allow him to file a second amended habeas petition, and the Court partly granted that request. [Dkt. 90, 102.] Gutierrez filed his second amended petition on January 29, 2024, asserting the same claims as in his first amended petition and arguing that his claims are not defaulted. [Dkt. 106.] The second amended petition raises the following issues:

(1) Trial counsel was ineffective for failing to:

    a.  Investigate and present a voluntary intoxication defense [*Id.* at 4–11];

    b.  Move to suppress his custodial statement and evidence from his arrest, and to investigate Detective Halloran [*Id.* at 11–22];

    c.  Question a juror who equivocated about her objectivity during *voir dire* [*Id.* at 23–25];

    d.  Object to the State's closing argument [*Id.* at 25–26];

    e.  Object to the trial court's failure to admonish the venire that a defendant's choice not to testify cannot be held against him [*Id.* at 26–28]; and

    f.  Carry out the above actions, which had the cumulative effect of violating his Sixth Amendment rights [*Id.* at 28–29];

(2) The State relied on perjured testimony from Nester and Detective Halloran [*Id.* at 29–31];

(3) The State withheld evidence related to Detective Halloran [*Id.* at 31–33];

(4) Gutierrez was initially detained for 72 hours in violation of *Gerstein v. Pugh*, 420 U.S. 103 (1975) [*Id.* at 33–39];

(5) Gutierrez's custodial statement to police was coerced [*Id.* at 39–41];

(6) The trial court's imposition of consecutive sentences violated his Sixth Amendment right to a jury trial [*Id.* at 41–44];

(7) Appellate counsel was ineffective for failing to present Grounds 1(b)–(e) and Ground 5 in his direct appeal. [*Id.* at 44–45.]

## II.  Legal Standard

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, a petitioner in custody pursuant to the judgment of a state court must make two showings to be eligible for a writ of habeas corpus: (1) "that he is in custody in violation of the Constitution or laws or treaties of the United States," § 2254(a), and (2) that the state postconviction court's adjudication of his claim "resulted in a decision that" either "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d)(1)–(2).

The requirements of § 2254 are difficult to clear. As the Supreme Court "has stated unequivocally, and on more than one occasion, . . . 'clearly established law as determined by [the Supreme] Court refers to the holdings, as opposed to the dicta, of

[the Supreme] Court's decisions as of the time of the relevant state-court decision.'" *Berkman v. Vanihel*, 33 F.4th 937, 945 (7th Cir. 2022) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 660–61 (2004)). The "contrary to" prong does not apply unless "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases . . . [or] confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different." *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). And a state court decision is not an "unreasonable application" of clearly established federal law unless it is "objectively unreasonable," "lying well outside the boundaries of permissible differences in opinion." *Felton v. Bartow*, 926 F.3d 451, 464 (7th Cir. 2019) (cleaned up). The decision must be "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

### III. Analysis

Respondent argues that Grounds 1(b)–(e), 2–5, and 7 are procedurally defaulted, and that Grounds 1(a) and 6 are barred by § 2254(d) and meritless.

### A. Claims Procedurally Defaulted

Federal courts may not review state prisoners' habeas claims that have been "procedurally defaulted in state court," a doctrine that advances "comity, finality, and federalism interests." *Davila v. Davis*, 582 U.S. 521, 527–28 (2017). There are two "paradigmatic" ways a petitioner can procedurally default a claim. *Clemons v. Pfister*, 845 F.3d 816, 819 (7th Cir. 2017) (quoting *Richardson v. Lemke*, 745 F.3d 258, 268 (7th Cir. 2014)). One is when a petitioner fails to "fairly present" a claim "throughout

13

at least one complete round of state-court review, whether on direct appeal of [the] conviction or in post-conviction proceedings," and "it is clear that those courts would now hold the claim procedurally barred." *Id.*; *Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004). Default also occurs when a state court denies a claim on an adequate and independent state procedural ground. *Davila*, 582 U.S. at 527; *Wilson v. Cromwell*, 69 F.4th 410, 418 (7th Cir. 2023), *cert. denied sub nom. Wilson v. Gierach*, 144 S. Ct. 1034 (2024); *Flint v. Carr*, 10 F.4th 786, 793 (7th Cir. 2021). A ground is adequate if it is "firmly established and regularly followed." *Wilson*, 69 F.4th at 419 (7th Cir. 2023) (quoting *Clemons*, 845 F.3d at 820). A ground is independent "if it does not depend on the merits of the petitioner's claim." *Flint*, 10 F.4th at 793. (internal quotation omitted). When a state court refuses to adjudicate a petitioner's federal claims because he didn't raise them in accordance with the state's procedural rules, "that will normally qualify as an independent and adequate state ground for denying federal review." *Id.* at 794 (internal quotation omitted).

A court may excuse procedural default and reach the merits of a petitioner's claim if he "demonstrates either (1) cause for the default and actual prejudice or (2) that failure to consider the claim will result in a fundamental miscarriage of justice." *Snow v. Pfister*, 880 F.3d 857, 864 (7th Cir. 2018) (internal quotation omitted); *see also Perruquet*, 390 F.3d at 514 ("[The procedural default doctrine] provides only a strong prudential reason . . . not to pass upon a defaulted constitutional claim presented for federal habeas review" and "is therefore subject to equitable exceptions." (cleaned up)).

14

Cause for procedural default exists when the petitioner "'can show that some objective factor external to the defense impeded' compliance with the procedural rule." *Love v. Vanihel*, 73 F.4th 439, 446–47 (7th Cir. 2023) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Prejudice requires a trial error that "worked to [the petitioner's] actual and substantial disadvantage." *Id.* at 448 (cleaned up). Finally, the miscarriage of justice exception "applies only in the rare case where the petitioner can prove" actual innocence. *Wilson*, 69 F.4th at 420–21 (internal quotation omitted).

Relevant here, Illinois' Post-Conviction Hearing Act allows a petitioner to file only one postconviction petition as a matter of right. 725 ILCS 5/122-1(f). Thereafter, the petitioner must move for leave to file a successive postconviction petition, which can only be granted if the petitioner shows cause for failing to bring his claims earlier and prejudice results from that failure. *Id.*

## 1. Grounds 1(b)–(f) & 7: Ineffective Assistance of Counsel

Gutierrez claims in Grounds 1(b)–(f) and 7 that his Sixth Amendment rights were violated by ineffective assistance of trial and appellate counsel. His trial counsel, he maintains, failed to suppress statements and evidence, question a potentially biased juror, and object to the State's closing argument and the court's failure to properly admonish the venire. [Dkt. 106 at 11–29.] Gutierrez's counsel on direct appeal also failed to raise these issues and to argue that his custodial statement was coerced. [*Id.* at 44–45.] Gutierrez first raised these claims in his initial postconviction petition, which was denied. When his appellate counsel declined to raise them on

appeal, Gutierrez sought and was denied leave to file a supplemental brief including them. He then raised them in his PLA, which was also denied.

Respondent argues that Grounds 1(b)–(e) and 7 were procedurally defaulted when Gutierrez failed to raise them in his counseled brief on appeal of his initial postconviction petition.[4] [Dkt. 130 at 11.] Gutierrez responds that, under *Kizer v. Uchtman*, 165 F. App'x 465 (7th Cir. 2006), attempting to file a *pro se* supplemental brief is enough to avoid procedural default, or that it excuses default because he gave the state appellate court an opportunity to address each habeas ground asserted. [Dkt. 106. at 1–3.]

*Kizer* only gets Gutierrez halfway to exhaustion. There, the Seventh Circuit held that a *pro se* supplemental brief "fairly present[s]" the issues within for exhaustion purposes even if the submitting party is denied leave to file. 165 F. App'x at 468–69. But *Kizer* explicitly declined to consider whether a state appellate court's denial of leave to file a *pro se* supplemental brief constitutes an adequate and independent state ground establishing procedural default. *Id.* at 467 n.1. Since then, it's made clear that it is, reasoning that Illinois' general rule that hybrid representation is disfavored is "an independent and adequate state ground of decision [that] precludes federal habeas review." *Booker v. Baker*, 74 F.4th 889, 893 (7th Cir. 2023) (quoting *Clemons*, 845 F.3d at 820). Gutierrez has given the Court no reason to think that Illinois courts have substantially changed their position since *Booker*. *See*

---

[4]     Respondent didn't address Ground 1(f), which claims that the cumulative effect of errors in Grounds 1(a)–(e) amount to ineffective assistance of counsel. However, Ground 1(f) is clearly procedurally defaulted for the same reasons that Grounds 1(b)–(e) are defaulted.

*id.* at 893 (petitioner bears the burden of showing a state procedural rule is not adequate). Here, the state appellate court denied Gutierrez leave to file his *pro se* supplemental brief because OSAD had already filed a brief on his behalf. [Dkt. 32-21.] Based on prevailing precedent, Grounds 1(b)–(f) and 7 were fairly presented, but denial of leave to file his *pro se* supplemental brief was an adequate and independent state ground that nevertheless renders them procedurally defaulted.

Gutierrez argues that even if his claims were defaulted, cause and prejudice excuse it. First, he suggests that his *pro se* supplemental brief establishes cause since he gave the state appellate court an opportunity to hear his claims. [Dkt. 106 at 1, 23, 25.] This is the same as saying that the court's decision to enforce Illinois' prohibition on hybrid representation excuses his failure to heed the rule—it's circular and would swallow *Booker's* holding that a state procedural rule is an adequate and independent ground. Nor does it constitute "cause," which must be an objective factor "external to the defense"—meaning it "cannot be fairly attributable to" the petitioner—that prevented Petitioner from raising his claim earlier. *Davila*, 582 U.S. at 528. However, it was Gutierrez's decision to engage counsel for his postconviction appeal. He didn't have a Sixth Amendment right to counsel at the postconviction stage and so bore the risk of attorney error. *Crutchfield v. Dennison*, 910 F.3d 968, 973 (7th Cir. 2018) (citing *Davila*, 582 U.S. at 528–29). Therefore, Gutierrez's supplemental brief doesn't establish cause.

After presenting Grounds 1(b)–1(e), Gutierrez's petition contains "Cause-Relatedness" and "Prejudice" sections relevant to these grounds in which he argues

cause and prejudice using the test for ineffective assistance of counsel set out in *Strickland v. Washington*, 466 U.S. 668 (1984). [Dkt. 106 at 27–29.] In some cases, attorney error can satisfy "cause" when it rises to the level of constitutionally ineffective assistance of counsel. *Davila*, 582 U.S. at 528; *Wrinkles v. Buss*, 537 F.3d 804, 812 (7th Cir. 2008) ("When a habeas petitioner seeks to excuse a procedural default through an ineffective-assistance claim, the 'cause' and 'prejudice' test from *Wainwright* is replaced by the similar test for ineffective assistance set out in [*Strickland*].") Gutierrez doesn't quite make this argument—his *Strickland* analysis concerns the merits of his claims that trial and direct review appellate counsel were ineffective and doesn't explain how their ineffectiveness prevented him from raising Grounds 1(b)–(e) on *postconviction* appeal. But in the interest of reading Gutierrez's *pro se* petition liberally, the Court notes that an ineffective assistance of postconviction counsel claim could not cure the procedural default here.

First, a claim that ineffective assistance is cause to excuse procedural default must have been raised before the state court. *Mata v. Baker*, 74 F.4th 480, 488 (7th Cir. 2023). Gutierrez didn't raise ineffective assistance of postconviction appellate counsel at any stage. Second, "attorney error in postconviction proceedings is not cause to excuse a procedural default" because "there is no Sixth Amendment right to counsel on collateral review." *Booker*, 74 F.4th at 894 (quoting *Crutchfield*, 910 F.3d at 973); *c.f. Garcia v. Dart*, 2023 WL 6541304, at *9 (N.D. Ill. Oct. 6, 2023) (assessing whether ineffective assistance of direct appeal counsel constitutes cause to excuse procedural default), *appeal dismissed sub nom. Garcia v. Baker*, 2023 WL 11646678

18

(7th Cir. Nov. 28, 2023), *and certificate of appealability denied sub nom. Garcia v. Baker*, 2024 WL 4763872 (7th Cir. June 12, 2024).

Lacking any other basis to excuse procedural default for Grounds 1(b)–(f) and 7, these claims are precluded from federal habeas review.

## 2. Grounds 2–3: Perjured Testimony and *Brady* Claim

As Respondent argues, Grounds 2 (the State relied on perjured witness testimony) and 3 (the State withheld evidence related to Detective Halloran) are also procedurally defaulted. Ground 2 was raised in Gutierrez's initial postconviction petition, but not his counseled brief on appeal. Ground 3 was raised for the first time in Gutierrez's successive postconviction petition, which the state appellate court denied leave to file. Neither made it through a full round of state court review, as required for exhaustion. Gutierrez argues that his claims are not defaulted because he attempted to raise them in his *pro se* supplemental brief but, for reasons already explained *supra* Part III.A.1., this is insufficient to avoid procedural default. Consequently, Grounds 2 and 3 are procedurally defaulted. Gutierrez attempted to raise Grounds 2 and 3 again in his motion for leave to file a first successive postconviction petition. The trial court denied leave because Gutierrez failed to show cause for not raising his claims earlier and prejudice therefrom, which is also "an adequate and independent state ground precluding federal habeas review." *Thomas v. Williams*, 822 F.3d 378, 385 (7th Cir. 2016). Grounds 2 and 3 are procedurally defaulted without excuse.

### 3. Ground 4: *Gerstein* Claim

In Ground 4, Gutierrez claims that he was detained by Detective Halloran for 72 hours without a judicial determination of probable cause in violation of *Gerstein v. Pugh*, 420 U.S. 103 (1975), which holds that the "Fourth Amendment requires a timely judicial determination of probable cause as a prerequisite for detention." 420 U.S. at 126; [Dkt. 106 at 33]. Probable cause determinations made within 48 hours of arrest are presumptively prompt. *Matz v. Klotka*, 769 F.3d 517, 527 (7th Cir. 2014).

Respondent argues that Ground 4 is also inexcusably procedurally defaulted. [Dkt. 130 at 12–13.] Gutierrez didn't raise his *Gerstein* claim until he moved to file a supplemental brief on appeal of his initial postconviction petition. [Dkt. 32-25 at 4.] For the reasons above, attempting to raise a claim in a denied *pro se* supplemental brief is insufficient to excuse procedural default. *See supra* Part III.A.1. Consequently, he failed to exhaust the claim through a complete round of state court review. Gutierrez raised Ground 4 again in his PLA and motion to file a successive postconviction petition, both of which were denied. *Thomas*, 822 F.3d at 385 (state court denial of leave to file petition for failure to show cause is an adequate and independent ground).

Gutierrez argues that interference by government officials prevented him from raising Ground 4 earlier, prejudicing his case. [Dkt. 106 at 34–38.] As to cause, he alleges that the general policies at Menard Correctional Center ("Menard") so restricted his ability to conduct legal research at the law library that it was "impossible" for him to "discover his issues" to include in his first postconviction

20

petition.[5] [Dkt. 106 at 37.] As a result, he lost "meaningful access to the courts," and failed to exhaust his claim. [*Id.* at 36 (citing *Lewis v. Casey*, 518 U.S. 343 (1996); *Bounds v. Smith*, 430 U.S. 817 (1977)).] Among these policies, Gutierrez claims that prisoners are only allowed to access the library for a maximum of 1.5 hours per week, subject to further restrictions based on whether the prisoner has a court deadline within the next 90 days; restrictive policies limit legal research time inside the library, effectively denying prisoners even 1.5 research hours per week; law clerks at the library are not knowledgeable about the law; and lockdowns occur for weeks or months at a time, disrupting library access and creating a backlog of prisoners waiting to access it. [Dkt. 106 at 34–37.]

"[C]laims of cause based on lack of access to a library" are evaluated "on a case-by-case basis." *Williams v. Buss*, 538 F.3d 683, 686 (7th Cir. 2008). Libraries provide one medium for inmates to exercise their right to access courts, but the Supreme Court has admonished parties that, because there is no "abstract, freestanding right to a law library or legal assistance," actual harm can't be shown just by establishing that a "law library or legal assistance program is subpar in some theoretical sense." *Lewis*, 518 U.S. at 351. Instead, a prisoner must show that the prison's policy "actually hampered" pursuit of their legal claim. *Lehn v. Holmes*, 364 F.3d 862, 868 (7th Cir. 2004). Gutierrez has not done so.

---

[5]    The record indicates that Gutierrez was housed at Menard when his initial postconviction petition supplemental brief and PLA were filed. [Dkts. 32-15 at 107; 32-28 at 66.]

First, Gutierrez was represented by appointed counsel consistently until OSAD withdrew during the appeal of his successive postconviction petition. But Gutierrez didn't explain how reduced access to Menard's library affected his counsel's ability to bring a *Gerstein* claim in his initial postconviction petition or on appeal. A person who is offered appointed counsel but chooses to proceed *pro se* does not, through their denial, acquire the right to access a law library. *United States v. Byrd*, 208 F.3d 592, 593 (7th Cir. 2000). It stands to reason then that neither does a person who accepts counsel's assistance, at least where counsel hasn't been shown to be constitutionally ineffective. *See, e.g.*, *Tasby v. Heimlick*, 2013 WL 620560, at *7 (N.D. Ind. Feb. 19, 2013) (petitioner assisted by stand-by counsel not entitled to access law library).

Second, even if Gutierrez lacked counsel at the initial postconviction stage, he hasn't shown that Menard's policies actually prevented him from raising a *Gerstein* claim earlier, for instance, in his *pro se* supplement to his initial postconviction petition. It's easy to see how the policies he describes—the existence of which Respondent doesn't contest—*could* make it difficult for an inmate to conduct fulsome legal research and meet court deadlines, especially if they lose time due to lockdowns or are stuck behind a backlog of inmates with more pressing deadlines. Indeed, courts in this circuit are no stranger to complaints about Menard's library policies. *See, e.g.*, *United States ex rel. Deloach v. Rednour*, 2010 WL 3893856, at *3 n.2 (N.D. Ill. Sept. 30, 2010) (collecting cases). But Gutierrez provided no details explaining how these policies affected *him*. For example, he didn't specify when the policies were in place,

indicate how much time he was allotted in the library, or call out any specific factors that inhibited his access, such as days he was on lockdown. *See, e.g.*, *United States ex rel. Plummer v. Gaetz*, 2009 WL 458620, at *3 (N.D. Ill. Feb. 23, 2009) (failure to specify what days Menard was on lockdown prevented petitioner from demonstrating lack of access to library sufficient to toll statute of limitations). Instead, he described the policies as they exist in the abstract, which is insufficient to demonstrate cause. *Lewis*, 518 U.S.

Additionally, any claim that Menard's policies impeded Gutierrez's ability to conduct legal research is belied by the multiple briefs he filed while housed there, all of which are lengthy, cogent, and filled with legal citations and citations to the record. *See, e.g.*, *Henyard v. Butler*, 2016 WL 5171783, at *7 (N.D. Ill. Sept. 21, 2016) (well-developed *pro se* briefs undermined petitioner's claim that lack of library access excused procedural default). For example, his supplement to his initial postconviction petition raises seven claims over 13 pages (excluding appendices) and is well-cited. [Dkt. 32-15 at 95–107.] After his appeal was denied, he filed a 20-page *pro se* PLA that is also sufficiently researched to state his claims. [Dkt. 32-25.] With this level of *pro se* advocacy, the Court cannot conclude that Menard's policies prevented Gutierrez from identifying and raising his *Gerstein* claim earlier.

The record also demonstrates that Ground 4 lacks merit. In denying Gutierrez's first successive postconviction petition, the trial court noted that there was no evidence that Gutierrez was "interrogated for 72 hours," as he claimed. [Dkt. 32-28 at 228.] Although this allegation appeared in the context of a coerced confession

23

claim rather than a *Gerstein* claim, it's nonetheless critical to the latter. Gutierrez claims that he stated in an affidavit that he was interrogated for 72 hours, [Dkt. 106 at 38], but the Court was unable to locate that affidavit and it's not included in the exhibit list for Gutierrez's first successive postconviction brief [Dkt. 32-28 at 67] or in the exhibits to the instant petition, [Dkt. 136.] Because Gutierrez has failed to show cause and prejudice, there is no excuse for his failure to exhaust Ground 4.

### 4. Ground 5: Coercion Claim

Next, Gutierrez asserts in Ground 5 that Detective Halloran coerced his custodial statement in violation of the Fifth Amendment. [Dkt. 106 at 39–41.] As Respondent correctly argues, Gutierrez didn't exhaust Ground 5 through a full round of state court review. He first presented this claim in his initial postconviction petition but didn't reassert it on appeal. [Dkt. 32-15 at 102.] Gutierrez then attempted to raise it in his motion to file a supplemental *pro se* brief, but as above, this was insufficient to preserve his claim. *See supra* Part III.A.1. Gutierrez also raised Ground 5 in his PLA and first successive postconviction petition, which were denied.

Gutierrez incorporates his cause and prejudice argument for Ground 4: that the conditions of his confinement impeded his ability to access Menard's law library and discover his claims in time to exhaust them. [Dkt. 106 at 40.] This argument doesn't establish cause for Ground 5 for the same reasons it didn't for Ground 4: Gutierrez had counsel for his initial postconviction and didn't show a lack of access to Menard's library. In fact, he raised Ground 5 in *pro se* briefs filed while housed at Menard. Consequently, Ground 5 is procedurally defaulted without excuse.

24

### B.     Claims Barred by § 2254(d) and Merits

Respondent acknowledges that Grounds 1(a) and 6 were properly exhausted through the state courts but argues that they're nonetheless barred by § 2254(d) and/or fail on the merits.

### 1.     Ground 1(a): Ineffective Assistance of Counsel

In Ground 1(a), Gutierrez contends that his trial counsel was ineffective for failing to investigate and present a voluntary intoxication defense.[6] He maintains that testimony from Trigger (Marco Canas) and an expert neuropharmacologist would have supported the defense, and counsel was ineffective for failing to contact them. Additionally, testimony from Antonio and Nester was consistent with voluntary intoxication.[7] [Dkt. 106 at 3–8.] Gutierrez exhausted this claim through the state courts, so § 2254(d) governs the Court's analysis.

#### i.     *Strickland* Standard

To prevail on a claim for ineffective assistance of counsel under *Strickland*, Garcia must demonstrate that (1) "counsel's performance was deficient" and (2) "the deficient performance prejudiced the defense." 466 U.S. at 687. The first prong requires a showing "that counsel's representation fell below an objective standard of reasonableness," or was "outside the wide range of professionally competent

---

[6]     Voluntary intoxication was available as an affirmative defense when Gutierrez's offense occurred in 2000. The Illinois General Assembly removed it in 2002. *Gutierrez II*, 2013 IL App (1st) 111309-U, ¶ 3 n.1.

[7]     Gutierrez's habeas petition also argues that investigation would have uncovered evidence of Detective Halloran's history of abuse and led to a motion to suppress. [Dkt. 106 at 10–11.] This same claim was presented in Ground 5 and wasn't exhausted through the state courts, so the Court only addresses it in Part III.A.4.

assistance," judged "under prevailing professional norms." *Id.* at 688, 690. A court deciding an ineffective assistance claim "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690. Additionally, to help eliminate "the distorting effects of hindsight," the court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Once a petitioner has established that counsel's performance was deficient, he must then demonstrate that counsel's deficient performance prejudiced his defense. To do so, a petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

### ii.    Application

For AEPDA deference purposes, the Court looks to the "last reasoned state-court decision" addressing the merits of this claim. *Dassey v. Dittmann*, 877 F.3d 297, 302 (7th Cir. 2017) (en banc) (quoting *Johnson v. Williams*, 568 U.S. 289, 297 n.1 (2013)). Here, that was the state appellate court's decision on postconviction appeal, *Gutierrez II*, 2013 IL App (1st) 111309-U. Because that decision neither was contrary to nor involved an unreasonable application of the Supreme Court's caselaw, the Court must deny relief. 28 U.S.C. § 2254(d).

Starting with the "contrary to" prong, the state appellate court correctly identified and articulated *Strickland* as the standard governing an ineffective

26

assistance of counsel claim. *Gutierrez II*, 2013 IL App (1st) 111309-U, ¶ 24 (citing *Strickland's* two-pronged standard). The court also noted that as to the first prong (the performance prong), the petitioner "must overcome a strong presumption that the challenged action or inaction of counsel was the product of sound strategy and not of incompetence." *Id.*

Gutierrez's primary argument is that the appellate court unreasonably applied *Strickland* because it assessed counsel's failure to bring a voluntary intoxication defense based on the trial record rather than scrutinizing the adequacy of counsel's pretrial investigation of this defense. [Dkt. 106 at 4–5.] He's correct that *Strickland's* standard for deficient performance is different for "strategic choices made after thorough investigation of law and facts relevant to plausible options," and "strategic choices made after less than complete investigation." The former are "virtually unchallengeable," while the latter are "reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." 466 U.S. at 690–91. Consequently, where a *Strickland* claim involves an allegedly inadequate investigation, the proper question "is not whether counsel should have presented" a specific defense but rather "whether the investigation supporting counsel's decision not to" pursue it "*was itself reasonable.*" *Wiggins v. Smith*, 539 U.S. 510, 522–23 (2003). Conversely, a court cannot simply assume that the scope of counsel's investigation was reasonable. *Id.* at 527.

According to Gutierrez, the appellate court erred in only analyzing the viability of a voluntary intoxication defense based on the evidence presented at trial. Instead,

it should have asked whether counsel was reasonable in deciding not to interview Trigger about the incident, and not to consult an expert about the effects of PCP. Had counsel done so, Gutierrez claims, he would have obtained information supporting Gutierrez's contention that he was intoxicated by PCP, marijuana, and alcohol during the incident. [*Id.* at 7.] A neuropharmacological expert would have further supported a voluntary intoxication defense by attesting to the effects of these substances on a person's cognitive and physical capabilities, including the potential for PCP to induce psychosis, hostility, agitation, and a sense of derealization. [*Id.* at 8–9.] Combined with the fact that Gutierrez ingested alcohol, marijuana, and PCP, that he initially told counsel and law enforcement that he had gaps in his memory, that Antonio testified that he was stumbling and attacked Jorge unprovoked, and that Nester testified he was mumbling to himself, Gutierrez argues that there is a reasonable probability that a voluntary intoxication defense would have prevailed at trial.

Gutierrez is also correct that the state appellate court didn't focus its analysis on the scope of his counsel's pretrial investigation. The court noted based on a *de novo* review of his petition, attached affidavits, and the trial record that his trial counsel was "aware of the possible intoxication defense" and that his decision to present a self-defense theory instead was "sound strategy" but didn't expand on what trial counsel knew or why he didn't explore an intoxication defense further, as the state trial court that it ultimately affirmed did. [*See* Dkt. 32-16 at 142–46.]

However, the court didn't unreasonably apply *Strickland* because it found that Gutierrez suffered no prejudice from counsel's failure to present a voluntary

28

intoxication defense. A court can, for efficiency reasons, resolve a *Strickland* claim on the prejudice prong alone. *Strickland*, 466 U.S. at 697 ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies."). In this case, it's abundantly clear that voluntary intoxication was unavailable to Gutierrez as a matter of state law, regardless of counsel's investigation. To assert a voluntary intoxication defense, a defendant must show that "his inebriated state was so extreme that it suspended his power of reason and rendered him incapable of forming a specific intent to commit the offense." *Gutierrez II*, 2013 IL App (1st) 111309-U, ¶ 34. Consequently, "[a] defendant may not rely on the defense of voluntary intoxication if he admits remembering the offense." *Id.* at ¶ 36 (*citing People v. McCoy*, 666 N.E.2d 805, 811 (Ill. App. Ct. 1996)). Fatal to Gutierrez's claim, the court reasoned, is the fact that Gutierrez gave a "detailed recollection of his specific intent to shoot Jorge and Nester" at trial. *Id.* at ¶ 36. Gutierrez didn't attempt to rebut this description of his trial testimony, so it is presumed correct. § 2254(e)(1) (state court's determination of a factual issue presumed correct in habeas action). Federal courts are also bound by a state court's ruling on an issue of state law. *Shaw v. Wilson*, 721 F.3d 908, 914 (7th Cir. 2013). Here, the state appellate court determined that a voluntary intoxication defense was unavailable because Gutierrez recounted the incident in detail (including his intent to harm Jorge and Nester), so he clearly had enough presence of mind to form specific intent. This being an issue of state law, the Court is bound by that

finding and can only conclude that Gutierrez's trial counsel did not prejudice his case by failing to investigate and present a voluntary intoxication defense.

The state appellate court also referenced other facts in the record that would undercut a voluntary intoxication defense: Nester and Melissa's trial testimony provided evidence of motive (that Gutierrez may have been disappointed by Melissa's rejection of his and her brothers' disapproval of his interest in their sister); and Trigger, who Gutierrez insists trial counsel should have interviewed, signed an affidavit matching Gutierrez's account of the incident and supporting his self-defense theory, which undermines the claim that Gutierrez didn't remember what happened and could have succeeded on voluntary intoxication. *Gutierrez II*, 2013 IL App (1st) 111309-U, ¶¶ 25, 29, 35. The Court concludes that the state appellate court reasonably found that Gutierrez wasn't prejudiced by trial counsel and denies Gutierrez relief on Ground 1(a).

## 2. Ground 6: Consecutive Sentences

Finally, Gutierrez argues in Ground 6 that the trial court's imposition of consecutive sentences violated his Sixth Amendment right to a jury trial. Gutierrez relies on *Alleyne*, which held that facts that increase a mandatory minimum sentence must be submitted to the jury. 570 U.S. *Alleyne* extended *Apprendi v. New Jersey*, which held that facts that increase a statutory *maximum* sentence must be submitted to the jury. 530 U.S. 466 (2000). Gutierrez argues that his consecutive sentences are void because the fact he alleges extended his mandatory sentence, "severe bodily injury," wasn't submitted to the jury.

30

He first raised this claim in his § 2-1401 motion, [Dkt. 32-27], which the trial court reasonably denied because (1) the Supreme Court has not said *Alleyne* is retroactive on collateral review and (2) the Seventh Circuit has suggested that it's unlikely to be declared retroactive since *Alleyne* is an extension of *Apprendi*, which is decidedly not retroactive. [*Id.* at 78 (*citing Simpson v. United States*, 721 F.3d 875, 876 (7th Cir. 2013)).] The Seventh Circuit continues to hold that *Alleyne* does not apply retroactively. *Crayton v. United States*, 799 F.3d 623, 624 (7th Cir. 2015), *cert. denied*, 577 U.S. 958 (2015). Consequently, the Court must also conclude that *Alleyne* isn't retroactive on collateral review and affords Gutierrez no relief.

Even if *Alleyne* were retroactive, Gutierrez's claim would still fail on the merits because the facts triggering his mandatory consecutive sentences was found beyond a reasonable doubt. Under Illinois law, consecutive sentences for any two felony offenses are mandatory if "one of the offenses for which defendant was convicted was first degree murder or a Class X or Class 1 felony and the defendant inflicted severe bodily injury." 730 ILCS 5/5-8-4(a)(i) (West 2002).[8] Illinois courts hold that mandatory consecutive sentences are necessary if a defendant is found guilty of first-degree murder, even without a separate finding of "severe bodily injury" because it "necessarily results in the most severe bodily injury—death." *People v. Orasco*, 2014 IL App (3d) 120633, ¶ 34, *vacated on other grounds by People v. Orasco*, 45 N.E.3d 681 (Ill. 2016); *see, e.g.*, *People v. King*, 2024 IL App (4th) 230648-U, ¶ 63, *appeal denied*, 2025 WL 379894 (Ill. Jan. 29, 2025) ("[O]ne of the offenses for which

---

[8] This language is found in later versions of the statute and currently at 730 ILCS 5/5-8-4(d)(1) (West 2025).

defendant was convicted was first degree murder, so those murder convictions triggered mandatorily consecutive sentencing."). Because Gutierrez was convicted of first-degree murder, consecutive sentences were mandatory even though the question of "severe bodily injury" wasn't submitted to the jury. The Court denies Gutierrez relief on Ground 6.[9]

## IV. Certificate of Appealability and Right to Appeal

This Court's denial of Gutierrez's petition is a final decision ending the case. Gutierrez may appeal only if he obtains a certificate of appealability from this Court or the Court of Appeals. 28 U.S.C. § 2253(c)(1)(A). The Court declines to issue a certificate of appealability because Gutierrez does not make a substantial showing of the denial of a constitutional right, *see* § 2253(c)(2), and reasonable jurists would not debate, much less disagree with, this Court's resolution of his claims. *See Arredondo v. Huibregtse*, 542 F.3d 1155, 1165 (7th Cir. 2008). If Gutierrez wishes to appeal, he must request a certificate of appealability from the Court of Appeals pursuant to Federal Rule of Appellate Procedure 22 and 28 U.S.C. § 2253(c), in addition to filing his notice of appeal.

Gutierrez must file a notice of appeal in this Court within 30 days after judgment is entered. Fed. R. App. P. 4(a)(1). He need not bring a motion to reconsider

---

[9] Respondent also argues that the Seventh Circuit has suggested *Alleyne* and *Apprendi* don't apply to facts mandating consecutive sentences since "the imposition of consecutive sentences on separate counts of conviction does not have the effect of pushing a sentence on any one count above the statutory maximum for a single count of conviction." [Dkt. 130 at 17 (quoting *United States v. Garcia*, 754 F.3d 460, 473 (7th Cir. 2014)).] The Court need not reach this argument since *Alleyne* isn't retroactive and wouldn't provide Petitioner relief if it were.

this decision to preserve his appellate right, but if he wishes the Court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). A Rule 59(e) motion must be filed within 28 days of entry of judgment and suspends the deadline for filing an appeal until the motion is ruled on. *See* Fed. R. Civ. P. 59(e); Fed. R. App. P. 4(a)(4)(A)(iv). A Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. *See* Fed. R. Civ. P. 60(c)(1). A Rule 60(b) motion suspends the deadline for filing an appeal until the motion is ruled on only if the motion is filed within 28 days of the judgment. Fed. R. App. P. 4(a)(4)(A)(vi). The time to file a Rule 59(e) or 60(b) motion cannot be extended. *See* Fed. R. Civ. P. 6(b)(2).

## V. Conclusion

For the foregoing reasons, the second amended petition for a writ of habeas corpus [Dkt. 106] is denied. The Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c). Final judgment shall enter in favor of Respondent Barwick and against Petitioner Gutierrez. Civil case terminated.

Enter: 14-cv-2799
Date:   March 11, 2025

_____
Lindsay C. Jenkins
United States District Judge